No. 84-499

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

DALE MALQUIST, GEORGE BOHARSKI,
GEORGE BELT and LOCAL 768, IBEW,

　　　　　Plaintiff and Appellant,

　-vs-

HOWARD P. FOLEY, a District of Columbia
Corporation; CITY ELECTRIC, a Montana
Corporation, and R.L. PAYNE COMPANY, INC.,
A Montana Corporation,

　　　　　Defendants and Respondents.

APPEAL FROM:　District Court of the Fourth Judicial District,
　　　　　　　　In and for the County of Missoula,
　　　　　　　　The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Terry Wallace argued, Missoula, Montana

　　　For Respondent:

　　　　　Garlington, Lohn & Robinson; Charles E. McNeil argued,
　　　　　(Foley), Missoula, Montana
　　　　　Corette, Smith, Pohlman & Allen; Lissa K. Swan argued,
　　　　　(City Electric), Butte, Montana
　　　　　Milodragovich, Dale & Dye; Karl H. Boehm, (co-counsel
　　　　　of City Electric), Missoula, Montana
　　　　　Worden, Thane & Haines; Stacey Weldele-Wade argued,
　　　　　(Payne), Missoula, Montana

　　　　　　　　　　　　Submitted:　December 10, 1985

　　　　　　　　　　　　　Decided:　February 13, 1986

Filed: FEB 13 1986

_____
　　　　　　　　Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This is an appeal from an order of the Fourth Judicial District Court dismissing plaintiffs' complaint on the basis that the action was preempted by federal law and the State District Court lacked subject matter jurisdiction to adjudicate the controversy. We reverse and remand for trial.

This action was instituted by plaintiffs Dale Malquist, George Boharski, George Belt and Local 768, IBEW. No issue has been raised on appeal concerning standing of Local 768, IBEW, to prosecute this tort action and therefore all plaintiffs will be treated as one.

In 1979, Champion International, of Bonner, Montana, began construction of an expansion project on a packaging plant in Missoula County, Montana. Champion hired Matthews, McCracken and Rutland (MM&R) of Baton Rouge, Louisiana, to do the general electrical contracting work. In March of 1980, MM&R, Howard P. Foley Company, City Electric and R. L. Payne, Inc., entered into a collective bargaining agreement with Local 768 of the International Brotherhood of Electrical Workers. Pursuant to the terms of the agreement signed by the parties, all electrical contractors on the project were to hire electricians through the Union referral books. Hiring could be from no other source unless labor was not available from the Union. Malquist, Boharski and Belt all placed their names in the referral book and were hired by MM&R until that company was terminated by Champion. At this time the three plaintiffs were laid off pursuant to a reduction in force and placed their names in the referral book for future employment. Plaintiffs were referred to defendants for employment, but were refused.

In September of 1980, a meeting was held between Union officials and representatives of defendant employers. A

2

Union business agent, Reg McMurdo, was shown a list of 20-30 names allegedly blacklisted from the project. Plaintiffs were blacklisted. Thereafter the Local filed a complaint under the collective bargaining agreement. The Labor-Management Committee deadlocked on the issue by a 6-6 vote, and the Union then dropped the complaint for the reason that the conduct complained of was not covered in the collective bargaining agreement, which only dealt with wages, hours and conditions of work.

Plaintiffs then filed claims in the State District Court for the willful and malicious blacklisting of the plaintiffs, seeking both compensatory damages and punitive damages. Two of the three defendants, R. L. Payne and City Electric, moved for summary judgment, alleging federal preemption. The District Court denied the motions for summary judgment, but dismissed the complaint, holding that blacklisting is arguably prohibited by the National Labor Relations Act (NLRA) and thus the State District Court lacked subject matter jurisdiction.

The issues presented on appeal are:

1. Whether plaintiffs' claim grounded in tort is preempted by the National Labor Relations Act, thereby denying the State District Court subject matter jurisdiction?

2. Whether plaintiffs failed to exhaust their administrative remedies?

3. Whether the action is barred by the statute of limitations?

Respondents place heavy reliance upon San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. In Garmon, supra, the United States Supreme Court established guidelines for determining respective jurisdictions of the National Labor Relations Board and the states in labor management relations. The Court said:

3

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782.

In dismissing the complaint, the trial court placed emphasis upon the rule articulated by the Garmon court that the conduct need only be "arguably subject" to the NLRA. The language used by the Court in Garmon supports the trial court's position:

> . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783.

Respondents acknowledge that two subsequent cases modified the Garmon approach. In Sears, Roebuck & Company v. San Diego County District Council of Carpenters (1978), 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209, and Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25 (1977), 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338, the Supreme Court protected the states from federal preemption when the states were controlling conduct traditionally subject to state jurisdiction, especially where the state had a substantial interest in regulation of the conduct at issue and the state's interest was one that did not unduly interfere with federal regulation. The exception to federal preemption recognized by the United States Supreme Court has been primarily confined to a "violence" exception. Where the defendant's conduct may well have constituted an unfair labor practice but amounted to violence, the United States Supreme Court has decided that the state's interest in protecting its

4

citizens from violence is sufficiently strong that the state's tort law will be allowed to regulate and punish such conduct. Farmer, 430 U.S. at 299, 97 S.Ct. at 1063, 51 L.Ed.2d at 349-350.

We do not find respondents' authority dispositive of the fact situation here at issue. Section 39-2-803, MCA, provides:

> Blacklisting Prohibited. If any company or corporation in this state authorizes or allows any of its agents to blacklist or any person does blacklist any discharged employee or attempts by word or writing or any other means whatever to prevent any discharged employee or any employee who may have voluntarily left the company's service from obtaining employment with another person . . . such company or corporation or person is liable in punitive damages to such employee so prevented from obtaining employment, to be recovered by him in a civil action . . . .

The conduct proscribed by the state statute is "blacklisting" per se. There is no requirement that blacklisting be related to an unfair labor practice. If an employer blacklists an employee for any reason, that employer is subject to tort liability under § 39-2-803, MCA.

In order for there to be a valid preemption in this case, we must find that blacklisting is protected by the NLRA. Section 7 of the NLRA, 29 U.S.C. § 157, relates to employee rights to self-organization, to bargain collectively and to engage in concerted activities for the purpose of bargaining collectively. The applicable provisions of § 8, specifically 29 U.S.C. § 8(a) of the NLRA, define unfair labor practices as: restraining or coercing employees in exercise of § 7 rights; dominating or interfering with a union; discriminating in regard to hiring and tenure to encourage or discourage membership in unions; discharging or discriminating against an employee because he has filed charges or given testimony under the NLRA; refusing to bargain collectively. Nothing in these sections refers to

5

blacklisting and clearly blacklisting would not be investigated by the Board unless the blacklisting was done for some purpose prohibited by the NLRA. Blacklisting for any purpose is unlawful in Montana.

The District Court felt that it should not inquire into the reasons for the blacklisting because "arguably" blacklisting was subject to the NLRA's proscriptions. In its order the District Court said:

> This court is not willing to invade the province of the Labor Board by staging an inquiry into blacklisting, this supposed list of electricians who were allegedly disapproved of and subsequently boycotted for, as yet, unknown reasons when they sought employment with the defendants.

No one in this litigation contends that plaintiffs were blacklisted for labor-related activities. The reason for the blacklisting is unknown. Blacklisting per se is unlawful under Montana law, § 39-2-803, MCA.

Plaintiffs argue that preemption is not called for because:

1. The underlying conduct, blacklisting, is not protected under the NLRA;

2. There is an overriding state interest in protecting citizens from blacklisting and it's consequent harm. This interest has been manifested in a statute awarding punitive damages for blacklisting.

3. There is no risk that this cause of action, in tort, will affect national labor policy.

We find plaintiffs' argument compelling in light of the recent decision of the 9th Circuit Court of Appeals in Garibaldi v. Lucky Food Stores, Inc. (9th Cir. 1984), 726 F.2d 1367.

Garibaldi was employed by Lucky Food Stores as a truck driver until his discharge in October, 1980. Garibaldi filed an action in state court in California alleging he was

wrongfully discharged for "whistle blowing." The case was removed to federal court and the Federal District Court held that his discharge was preempted by the National Labor Management Relations Act. The Circuit Court of Appeals reversed and established guidelines for preemption which allow plaintiffs' claims in this case to go forward.

In Garibaldi, supra, the Ninth Circuit placed great emphasis upon a balancing of state and federal interests. The court quoted from the United States Supreme Court decision in Farmer, supra, wherein the Court stated:

> Our cases indicate, however, that inflexible application of the doctrine [of preemption in industrial relations] is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.

Garibaldi, 726 F.2d at 1373, quoting Farmer, 430 U.S. at 302, S.Ct. at 1064, 51 L.Ed.2d at 351.

The Ninth Circuit acknowledged that the United States Supreme Court carefully tailored its holding to situations where the defendant's conduct was outrageous and "particularly abusive." The Garibaldi court expanded the "violence" exception to embrace wrongful discharge conduct amounting only to a violation of California's public policy. While the discharge of Garibaldi may have constituted an unfair labor practice, yet it was significant that California had a paramount interest in regulating violations of public policy within its state. The court in Garibaldi, 726 F.2d at 1374, said:

> Thus, it is clear that California's interest in providing a cause of action for violation of public policy or a statute is the enforcement of the underlying statute or policy, not the regulation of the employment relationship.

Certiorari to the United States Supreme Court was denied at 105 S.Ct. 2319.

The case at bar is similar. Blacklisting per se is proscribed in Montana. The statute does not seek to regulate the relationship between the employer and the employee. Neither does the statute seek to regulate unfair labor practices treated in § 7 or § 8 of the NLRA, 29 U.S.C. §§ 157 and 158.

We find the rationale in Garibaldi to be persuasive and adopt it as the basis for our decision here. The court said:

> A claim grounded in state law for wrongful termination for public policy reasons poses no significant threat to the collective bargaining process; it does not alter the economic relationship between the employer and employee. The remedy is in tort, distinct from any contractual remedy an employee might have under the collective bargaining contract. It furthers the state's interest in protecting the general public--an interest which transcends the employment relationship. (Citation omitted.)

Garibaldi, 726 F.2d at 1375.

The act of blacklisting per se does not constitute an unfair labor practice. Blacklisting sounds in either (1) intentional infliction of mental or emotional distress or (2) tortious interference with prospective or present contractual relationships. However, in light of the provisions of § 39-2-803, MCA, blacklisting itself constitutes tortious conduct giving rise to a civil remedy. We therefore hold that federal preemption does not exist.

There is not an exhaustion question in this case. Administrative remedies are in the federal system. We here have an action grounded in tort under state law. The conduct complained of is, as we have held, not subject to NLRA proscription. The tortious conduct complained of in state court has no exhaustion component.

Our holding that plaintiffs' claim constitutes a tort under state law requires the application of the three year statute of limitations applicable to tort actions in Montana, § 27-2-204, MCA. Because no specific statute of limitations

8

is provided under state law for blacklisting, the tort of blacklisting is covered by the general tort statute of limitations and of course the same would be true for actions grounded in intentional infliction of mental distress and tortious interference with contractual relationships. This cause was filed within two years of the incidents in question and is timely.

We reverse and remand for trial in accordance with the views herein expressed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

Mr. Justice L. C. Gulbrandson dissenting.

I respectfully dissent.

The majority holds that the conduct complained of is not subject to NLRA proscription. In effect, an exception to the preemption requirement has been created by labeling the action as one in tort under state law. An opposite result was reached in Campbell v. McLean Trucking Company (E.D.N.Y., 1984), 592 F.Supp. 1560, 1564, where the court stated:

> A mere labeling of the conduct complained of, however, does not satisfy the requirements necessary to avoid preemption. The Supreme Court in Lockridge, 403 U.S. at 292, 91 S.Ct. at 1920, said that it is the conduct and not the legal description that is important. This substance-form problem was recognized, for example, in Breitegger v. C.B.S., 43 Cal.App.3d 283, 117 Cal.Rptr. 699, 706 (1974), where an unfair labor practice within the Board's jurisdiction was not cognizable in State court merely by labeling it an intentional tort.

Section 8 of the NLRA clearly prohibits employment discrimination, and blacklisting is recognized as an unfair labor practice.

> Further, as indicated by Mount Desert Island Hospital and contrary to plaintiffs' State tort characterization, blacklisting has long been recognized as an unfair labor practice and, thus, prohibited by the Act. See NLRB v. Waumbec Mills, 114 F.2d 226, 232-33 (1st Cir.1940); Cone Bros. Contracting Co., 135 N.L.R.B. 108 (1962). In short, at the least, plaintiffs' claim one is "'arguably subject to . . . the Act' . . . [citation omitted] . . . and therefore come[s] within the primary jurisdiction of the . . . Board . . . ." Abrams v. Carrier Corp., 434 F.2d 1234, 1253 (2d Cir.1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). (Emphasis in original.)

Campbell, supra, 592 F.Supp. at 1563.

The majority opinion contains the following statement:

> No one in this litigation contends that plaintiffs were blacklisted for labor-related activities.

In fact, plaintiff's counsel, in his brief filed July 5, 1984, with the trial court, declared as follows:

> When this case was presented to the Board, plaintiffs had to raise and prove to the Board that defendants' maintenance, circulation and other use of the blacklist was for the purpose of discriminating against plaintiffs for activites [sic] relating to self-organization, collective bargaining, concerted actions or union affilitations [sic]. 29 USC §158(a)(1) and (3).

I also note that Local 768, International Brotherhood of Electrical Workers, is a party plaintiff in this action.

I agree with the trial court's determination that the first issue to be decided is whether blacklisting occurred, and if so, for what reasons. That issue is arguably within the jurisdiction of the NLRB and that Board should be allowed to exercise its remedial authority if blacklisting activity is found. The trial court, in dismissing the cause conditionally without prejudice, clearly would entertain the plaintiff's action in tort if the NLRB found that blacklisting occurred.

I would affirm.

_____,
Justice

I join in the foregoing dissent of Mr. Justice L. C. Gulbrandson.

_____
Chief Justice

11