No. 86-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

JOHN S. SMITH,

        Plaintiff and Appellant,

  -vs-

THE MONTANA POWER COMPANY,
a Montana corporation,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Harlen, Thompson & Parish; Richard L. Parish argued,
        Helena, Montana

    For Respondent:

        Patrick T. Fleming argued, Butte, Montana

Submitted: November 25, 1986

Decided: January 16, 1987

Filed: JAN 16 1987

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Appellant John Smith instituted a wrongful termination action against the Montana Power Company (MPC), specifically pleading negligence and breach of good faith and fair dealing. The District Court for the Second Judicial District, Silver Bow County, granted the summary judgment motion of MPC on the ground that Mr. Smith's claims were preempted by federal law. We affirm.

The issue is whether the District Court erred when it held that Mr. Smith's negligence and good faith claims were preempted by federal law.

In December 1981, John Smith was hired by MPC as an instrument and control journeyman at Colstrip I and II. Mr. Smith was a member of the International Brotherhood of Electrical Workers Local No. 44 which had a collective bargaining agreement with MPC during all times relevant to this case. In September 1982, Mr. Smith was discharged by MPC. Mr. Smith maintains in his brief that he attempted to file a grievance in accordance with the collective bargaining agreement, but MPC refused to discuss the case with his union representative. The District Court found, however, that "[t]he affidavits submitted by Defendant also disclose that Plaintiff failed to exhaust his remedies under the collective bargaining agreement."

Mr. Smith filed an amended complaint in April 1986, alleging MPC had violated its duty of good faith and fair dealing and had negligently investigated the allegations which led to his termination. MPC filed a motion for summary judgment on the grounds: (1) that John Smith did not exhaust the grievance procedure set forth in the collective

2

bargaining agreement; (2) that state law is preempted by federal law in this case and thus the state tort claims must be dismissed; and (3) that the applicable federal statute of limitations expired prior to the filing of the complaint. The District Court granted MPC's motion for summary judgment stating that the state tort claims were preempted by the federal labor law governing collective bargaining agreements.

Did the District Court err when it granted summary judgment and held that Mr. Smith's negligence and good faith claims were preempted by federal law?

A summary judgment motion shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. There is no dispute that there was a collective bargaining agreement in effect between MPC and Mr. Smith when Mr. Smith was discharged. There is also no dispute that Mr. Smith filed this lawsuit in the District Court for the Second Judicial District alleging two state tort law violations on the part of MPC. We agree with the District Court that Mr. Smith has failed to set forth any material facts precluding summary judgment.

Our analysis must then shift to whether MPC is entitled to judgment as a matter of law. The District Court based its dismissal decision primarily on the United States Supreme Court case of Allis-Chalmers v. Lueck (1985), 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206. In Allis-Chalmers, Roderick Lueck brought a state tort claim against his employer and its insurer which administered an insurance plan included in a collective bargaining agreement, seeking recovery for alleged bad faith in the handling of his back injury claim. The collective bargaining agreement established a grievance

3

procedure which culminated in final and binding arbitration. Mr. Lueck did not attempt to grieve his dispute, but filed suit in state court. The Wisconsin Supreme Court held Mr. Lueck's tort claim was not preempted by national labor laws. The United States Supreme Court reversed stating:

> We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim (cite omitted) or dismissed as pre-empted by federal labor-contract law.

Allis-Chalmers, 471 U.S. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221. Allis-Chalmers reasoned that unless federal law governed claims which involve a collective bargaining agreement, varying interpretations could result and the congressional goal of a unified body of labor-contract law would be subverted. In addition, federal preemption of these state-tort claims was held necessary to preserve the central role of arbitration in the resolution of labor disputes.

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . .

29 U.S.C. § 185(a). Textile Workers v. Lincoln Mills (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, interpreted § 301 to be a congressional mandate to develop a unified federal common law to address labor contract disputes. Teamsters v. Lucas Flour Co. (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, then addressed the preemption of § 301 and concluded "that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local

4

rules." <u>Lucas Flour</u>, 369 U.S. at 104, 82 S.Ct. at 577, 7 L.Ed.2d at 600.

Although Mr. Smith did not mention the collective bargaining agreement in his amended complaint, the fact remains that the bargaining agreement must be analyzed to resolve this case. The <u>Allis-Chalmers</u> court stated:

> [I]t is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis-Chalmers' conduct breached that implied contract provision.

<u>Allis-Chalmers</u>, 471 U.S. at 215, 105 S.Ct. at 1913, 85 L.Ed.2d at 218.

Likewise, the issues surrounding Mr. Smith's discharge are questions of federal contract interpretations. The obligations regarding MPC's dismissal of Mr. Smith arise out of the various collective bargaining agreement sections set out below. The employment agreement between MPC and the Electrical Workers Local Union No. 44, of which Mr. Smith was a member, provides in pertinent part:

### ARTICLE II.   TERM

Section 1.
That for and in consideration of harmonious relations and settled conditions of employment with financial and personal relations mutually beneficial, the parties hereto do hereby enter into, establish and agree to the following wage schedules and conditions of employment . . . It is understood and agreed that the members of the International Brotherhood of Electrical Workers in the employ of the Company under this Agreement and receiving the following wage schedules and conditions of employment are in return therefor to render to said Company honest and diligent service.

### ARTICLE III.   RECOGNITION

Section 1.
The "Company" hereby recognizes the "Union" as the exclusive bargaining agent for all employees performing electrical work in the classifications covered hereby . . .

In addition, the bargaining agreement sets out a very extensive grievance procedure to be followed by any employee "who feels that he or they have been aggrieved on any matter arising out of or outside of the Agreement . . ." The grievance procedure spells out a six step process that must be followed by an aggrieved employee. At the conclusion of an unsuccessful grievance proceeding, the agreement provides for arbitration of the dispute:

> It is understood and agreed that in the event any question or controversy arising under this Agreement, or any of its terms, cannot be amicably adjusted by the parties hereto, the same shall be settled by arbitration, as follows:

The following arbitration section sets out a detailed and complete arbitration process and provides that such arbitration "shall be final and binding upon the parties."

The collective bargaining agreement between Mr. Smith and MPC was unusual in that it did not address the discharge of an employee or the standards to be applied in a discharge situation. Thus, while there are not any specific discharge provisions upon which Mr. Smith's tort claims are "substantially dependent," it is clear that those tort claims are "substantially dependent" on the above referenced sections. The grievance procedure covers all grievances "arising out of or outside the [a]greement" (emphasis added). Therefore the grievance procedure, and the arbitration procedure if the grievance proceedings prove unsuccessful, covers Mr. Smith's dispute with MPC.

This Court cannot neutralize or disregard the collective bargaining agreement. As required by Allis-Chalmers, we conclude that the District Court did not err in holding Mr. Smith's negligence and good faith claims were preempted by

6

federal law. This decision is necessary to insure a unified body of labor-contract law and preserve the central role of arbitration in labor disputes.

We note that the District Court found that "[t]he affidavits submitted by Defendant also disclose that Plaintiff failed to exhaust his remedies under the collective bargaining agreement." Although the District Court did not base its summary judgment order on the fact that Mr. Smith failed to exhaust his grievance procedure, we should point out that our recent case of Brinkman v. State of Montana (Mont. 1986), ___ P.2d ___, 43 St.Rep. 2163, ruled that the failure to exhaust contractual remedies under a collective bargaining agreement barred Mr. Brinkman from suing for wrongful discharge. While the Brinkman case does not control the disposition of this case because the District Court did not base its summary judgment on Mr. Smith's failure to exhaust the grievance procedure, we do note the Brinkman holding.

We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
_____
_____
Justices

7