No.   91-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

BARBARA FOSTER,

          Plaintiff and Appellant,

     -vs-

ALBERTSONS, INC., a corporation doing business
under the laws of the State of Montana; and
BOB ENGLE and KEN BLACKBURN, as individuals,

          Defendants and Respondents.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Peter Michael Meloy argued, Meloy Law Office,
          Helena, Montana

     For Respondents:

          Donald Robinson argued, Poore, Roth & Robinson,
          Butte, Montana
          William Sternhagen, Keller, Reynolds, Drake,
          Sternhagen & Johnson, Helena, Montana

FILED

Filed JUL 27 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted: May 28, 1992

Decided: July 27, 1992

                                          Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This appeal arises from the District Court of the First Judicial District, Lewis and Clark County. The appellant, Barbara Foster, appeals that portion of the judgment entered in the case which was adverse to her following a jury trial on claims she brought against the respondents, Albertsons, Inc., Bob Engle and Ken Blackburn, after she was discharged from employment. We affirm in part, reverse in part and remand.

The appellant raises the following issues:

1. Did the District Court err in directing a verdict in favor of the respondents on the appellant's breach of the implied covenant of good faith and fair dealing and wrongful discharge claims?

2. Did the District Court err in directing a verdict in favor of the respondents on the appellant's intentional infliction of emotional distress claim?

The appellant began working for Albertsons in Helena as a grocery clerk in January 1984. She was employed under the terms of a collective bargaining agreement between Albertsons and the United Food and Commercial Workers International Union. The collective bargaining agreement contained a "just cause" provision for the discharge of an employee.

The appellant testified that during the course of her employment with Albertsons respondent Bob Engle, who was the manager of the store, sexually harassed her. She testified that Engle made lewd comments, solicited social contact and fondled her

2

while at work. She further testified that she consistently rejected Engle's advances and did her best to ignore his sexual innuendos and comments. Engle denied sexually harassing the appellant in any manner.

Testimony also reflected that in early March 1987, Engle and respondent Ken Blackburn, the loss prevention manager at Albertsons, began to suspect that the appellant was mishandling company funds and failing to record certain customer purchases. "Special shoppers" or "test shoppers" were hired to pose as impatient customers who would leave the correct change for their purchase at the checkstand during another customer's transaction. Company policy required that if an impatient customer left money, the money was to be recorded as a separate sale immediately after completing the other customer's transaction. The appellant was aware of this procedure.

Engle and Blackburn were unable to locate purchases made by the test shoppers on the cash register tapes from the appellant's till. On March 16, 1987, Engle and Blackburn summoned the appellant into the store office; during the time she was there her employment was terminated. The appellant testified that she was forced to remain in the office for more than two hours and that Engle forced her back in her chair each time she sought to leave. Engle and Blackburn each testified that the appellant was not detained against her will and not physically pushed back in her chair. While in the office, the appellant did write and sign a statement admitting to dishonest behavior.

3

After her termination, the appellant filed a claim of sex discrimination against Albertsons and Engle with the Montana Human Rights Commission asserting that she had been sexually harassed by Engle throughout the course of her employment with Albertsons. After receiving a "right to sue" letter from the Human Rights Commission, the appellant filed the present action in the District Court on March 11, 1988. The appellant never sought to utilize the grievance procedure under the collective bargaining agreement covering her employment with Albertsons.

The appellant's complaint named Albertsons and Engle and Blackburn, individually, as defendants. Although not artfully drafted, her complaint appears to have sought recovery of damages for the following claims:

Count I -- Breach of the implied covenant of good faith and fair dealing;

Count II -- False imprisonment;

Count III -- Wrongful damage to her marriage;

Count IV -- Assault and battery;

Count V -- Negligent and intentional infliction of emotional distress;

Count VI -- Defamation; and

Count VII -- Wrongful discharge.

The case was tried to a jury. Upon motion of the respondents, the court directed a verdict in their favor on the defamation claim on the grounds that there was no evidence that the defamatory matter was "published." It also directed a verdict on the implied

4

covenant and wrongful discharge claims based on its conclusion that the claims were preempted by federal labor law because the appellant's employment with Albertsons was covered by a collective bargaining agreement. On its own motion, the court directed a verdict in favor of the respondents on the intentional infliction of emotional distress claim based on its conclusion that the tort was not recognized in Montana as a separate cause of action. It also directed a verdict against the appellant on the wrongful damage to marriage claim on the grounds that, while it might constitute an element of damages, it could not be a separate count.

The case was submitted to the jury by way of a special verdict form which stated as follows:

> We, the jury in the above-entitled matter, find the following special verdict in this case:
>
> Issue No. 1: Did the Defendants commit an assault or battery against the Plaintiff?
>
> Answer: Yes _____ No _____
>
> Issue No. 2: Did the Defendants engage in sex discrimination against the Plaintiff in violation of the Constitution of the State of Montana?
>
> Answer: Yes _____ No _____
>
> Issue No. 3: Did the Defendants falsely imprison the Plaintiff?
>
> Answer: Yes _____ No _____
>
> If you answered "no" to Issues 1, 2, and 3, then proceed no further. Have your foreperson sign this verdict and inform the Bailiff that you have reached a verdict. If you answered Issue Nos. 1, 2, and/or 3 "yes", then answer the following:

5

Issue No. 4: [T]he amount of money awarded to the Plaintiff for her losses is $ _____.

Issue No. 5: Did the Defendants act in a wilful, wanton, reckless and malicious fashion against the Plaintiff, justifying an award of punitive damages?

Answer: Yes _____ No _____

(Note: Eight of you must agree to your answer to each issue).

In relation to Issue No. 2 of the special verdict form, the jury was given an instruction which set forth in its entirety Article II, Section 4, of the Montana Constitution:

INSTRUCTION NO. 19

The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm[,] corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

The jury found for the appellant on the assault and battery and false imprisonment issues and for the respondents on the sex discrimination issue. The jury also found that the respondents' conduct toward the appellant justified an award of punitive damages. It awarded the appellant $5,000 in general damages and, in a separate post-trial proceeding, $5,000 in punitive damages. The appellant's motion to increase the punitive damages award was denied by the District Court. The appellant obtained new counsel and appealed.

I.

Did the District Court err in directing a verdict in favor of

6

the respondents on the appellant's claims of breach of the implied covenant of good faith and fair dealing and wrongful discharge?

The District Court directed a verdict against the appellant as a matter of law on her claims of breach of the implied covenant of good faith and fair dealing and wrongful discharge. It concluded that the claims were preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185(a), because her employment with Albertsons was covered by a collective bargaining agreement. Our standard of review on appeal is whether the District Court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The United States Supreme Court has interpreted § 301 as a congressional mandate to develop a unified federal common law to address labor contract disputes. Textile Workers Union v. Lincoln Mills (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. In order to ensure a uniform interpretation of labor contract terms, federal labor law preempts, pursuant to § 301, any state-law claim which is based on a collective bargaining agreement or is substantially dependent on an interpretation of its terms. Allis-Chalmers Corp. v. Lueck (1985), 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206, 221.

7

The District Court's conclusion that the appellant's claims were preempted by federal labor law was based on our decisions in Brinkman v. State (1986), 224 Mont. 238, 729 P.2d 1301; Smith v. Montana Power Co. (1987), 225 Mont. 166, 731 P.2d 924; and Fellows v. Sears, Roebuck and Co. (1990), 244 Mont. 7, 795 P.2d 484. In ruling on the question of preemption, the District Court stated:

> The wrongful discharge action and the violation of the covenant as it relates to losing the job, the cases are pretty clear. I think the Brinkman and Montana Power [Smith] case and Fellows case, that they're right. She has to go through the collective bargaining agreement. I don't have jurisdiction to even address those items based on those cases, and the fact that they [the respondents] filed a motion for summary judgment, and I agree, it was untimely and thus denied, doesn't preclude them from raising that on a motion for directed verdict. So, in that regard, the motion is also granted.

Each of the cases relied on by the District Court considered the preemptive effect of § 301 on state-law claims where the employment relationship was covered by a collective bargaining agreement. Because Smith and Fellows were at least partially premised on our decision in Brinkman, a focus on Brinkman is appropriate.

The plaintiff in Brinkman was a state employee whose employment was covered by a collective bargaining agreement between the State of Montana and the Montana Public Employees Association. The plaintiff brought suit against the State alleging that he had been wrongfully discharged in retaliation for his work-related injury, thus violating public policy. He also alleged that he was discharged in violation of an implied covenant of good faith and fair dealing. The district court granted summary judgment against the plaintiff, holding that he was barred from further proceedings

8

pursuant to § 301 because of his failure to exhaust contractual remedies under the collective bargaining agreement.

Brinkman contended on appeal that under our holding in Malquist v. Foley (1986), 220 Mont. 176, 714 P.2d 995, a state-law claim for discharge in violation of public policy would not be preempted by federal law. In Malquist, we cited approvingly from Garibaldi v. Lucky Food Stores, Inc. (9th Cir. 1984), 726 F.2d 1367, which held that claims for wrongful discharge in violation of public policy would not be preempted. Garibaldi involved an employee who was discharged for reporting a shipment of adulterated milk to health officials.

We agreed with the district court in Brinkman that the plaintiff's claims were preempted by § 301. We distinguished Malquist, stating that it was inapplicable because the collective bargaining agreement in Malquist did not cover the "conduct complained of" (blacklisting). Brinkman, 224 Mont. at 245, 729 P.2d at 1306. We also distinguished Garibaldi, clarifying that in that case the state-law claim furthered a state interest in protecting the general public which transcended the employment relationship. Brinkman, 224 Mont. at 247, 729 P.2d at 1308. We concluded that Brinkman's claims did not involve a state interest in protecting the general public which transcended the employment relationship and that the state interest which did exist was "completely and inexorably intertwined" with the employment relationship because the collective bargaining agreement protected the plaintiff from discharge without just cause. Brinkman, 224

9

Mont. at 247-48, 729 P.2d at 1308.

The appellant asserts that Brinkman is no longer viable as a standard for § 301 preemption in light of the United States Supreme Court's decision in Lingle v. Norge Division of Magic Chef, Inc. (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410. We agree.

In Lingle, the issue presented was whether an Illinois employee covered by a collective bargaining agreement that provided a remedy for discharge without just cause could enforce her state-law remedy for retaliatory discharge for filing a workers' compensation claim. After Lingle's action was removed to federal court on the basis of diversity jurisdiction, the federal district court dismissed her state-law claim based on § 301 preemption. It concluded that the retaliatory discharge claim was "inextricably intertwined" with the provision in the collective bargaining agreement which prohibited discharge without just cause. Lingle, 486 U.S. at 402. The Seventh Circuit Court of Appeals agreed that the state-law claim was preempted by § 301, concluding that the disposition of the retaliatory discharge claim involved the same factual analysis as the contractual determination under the collective bargaining agreement of whether Lingle was discharged for just cause. Lingle, 486 U.S. at 402.

The Supreme Court reversed the Court of Appeals' decision, stating:

> We agree with the court's explanation that the state-law
> analysis might well involve attention to the same factual
> considerations as the contractual determination of
> whether Lingle was fired for just cause. But we disagree
> with the court's conclusion that such parallelism renders
> the state-law analysis dependent upon the contractual

10

analysis. . . . § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.

Lingle, 486 U.S. at 408-09.

The Supreme Court noted that to prove retaliatory discharge under Illinois law Lingle had to show (1) that she was discharged, and (2) that the employer's motive in discharging her was to deter her from exercising her rights under the state workers' compensation laws or to interfere with her exercise of those rights. Lingle, 486 U.S. at 407. It held that the claim was not preempted by § 301, concluding:

Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge, [citation omitted]; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for §301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

Lingle, 486 U.S. at 407.

Finally, the Supreme Court noted in Lingle that there was nothing novel in its recognition in that case that substantive rights in a labor relations context can exist without the necessity of interpreting collective bargaining agreements. Lingle, 486 U.S. at 411. Discussing antidiscrimination laws in particular, the Supreme Court stated that:

11

> The operation of the antidiscrimination laws does, however, illustrate the relevant point for §301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory--or retaliatory--discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence . . . of the state-law violation dependent upon the terms of the private contract.

Lingle, 486 U.S. at 412-13.

Lingle holds that a state-law claim is preempted by § 301 only where its resolution requires construing the collective bargaining agreement. This is true even if the state-law analysis involves the same factual considerations as the contractual determination under the collective bargaining agreement of whether the employee was discharged for just cause. Thus, our decision in Brinkman is overruled to the extent that it holds that a state-law claim is preempted merely because resolution of such a claim requires the same analysis of the facts as the contractual determination of just cause under the collective bargaining agreement.

We now address the appellant's state-law claims of breach of the implied covenant of good faith and fair dealing and wrongful discharge in light of the Supreme Court's preemption analysis in Lingle. The appellant's implied covenant claim comprised Count I of her complaint. In this count, the appellant listed specific allegations of misconduct on the part of the respondents which formed the bases of her claim. These included allegations that Engle sexually harassed her throughout her period of employment with Albertsons and discriminated against her on the basis of sex in violation of the Montana Constitution.

The District Court correctly concluded that the appellant's

12

breach of the implied covenant of good faith and fair dealing claim was preempted by § 301. Any implied covenant of good faith and fair dealing in the employment context arises from the underlying contract of employment which, here, is the collective bargaining agreement. Collective bargaining agreements must be interpreted by application of federal law, not state law. Teamsters Union v. Lucas Flour Co. (1962), 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593, 598. Because an implied covenant arises from or is implied in the collective bargaining agreement, questions involving the existence and breach of an implied covenant necessarily require placing the terms of the collective bargaining agreement in issue. Thus, the implied covenant claim is preempted by federal law pursuant to § 301. See Paige v. Henry J. Kaiser Co. (9th Cir. 1987), 826 F.2d 857, cert. denied, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). We hold that the District Court did not err in directing a verdict in favor of the respondents on the appellant's breach of the implied covenant claim.

The appellant's wrongful discharge claim comprised Count VII of her complaint. In this count, the appellant incorporated by reference the specific allegations of Count I, including those of sexual harassment and sex discrimination. The appellant asserted that she was discharged in retaliation for resisting Engle's alleged sexual harassment activities.

Montana has recognized a common law cause of action for retaliatory discharge related to sexual harassment. Specifically, we recognized a cause of action for discharge from employment that

13

violates public policy. Drinkwalter v. Shipton Supply Co. (1987), 225 Mont. 380, 732 P.2d 1335; Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015. Sexual harassment is against public policy. Drinkwalter, 225 Mont. at 384, 732 P.2d at 1338 (citing Holien v. Sears, Roebuck and Co. (Or. 1984), 689 P.2d 1292 and Chamberlin v. 101 Realty, Inc. (D.N.H. 1985), 626 F.Supp. 865).

To prove retaliatory discharge, the appellant would have to show that (1) she was discharged, (2) she was subjected to sexual harassment during the course of employment, and (3) her employer's motivation in discharging her was to retaliate for her resistance to those sexual harassment activities. Holien, 689 P.2d at 1300. As in Lingle, each of these purely factual questions, including the respondents' defense against the claim, pertains to the conduct of the appellant and the conduct and motivation of the respondents. While the factual inquiry may parallel that of the contractual determination of just cause, it does not turn on the meaning of any term of the collective bargaining agreement. Thus, the appellant's wrongful discharge claim is independent of the collective bargaining agreement for purposes of § 301 preemption. Consequently, the District Court incorrectly concluded that the appellant's wrongful discharge claim was preempted by § 301.

The respondents assert that Lingle is distinguishable from the present case because in Lingle the plaintiff's complaint was dismissed in its entirety by the federal district court. They assert that in this case the appellant was given the opportunity to

14

"fully present and litigate" her "sexual discrimination/harassment" claim by way of Issue No. 2 of the special verdict form and that the jury rejected her allegations of harassment. As a result, the respondents argue that allowing the appellant to litigate her wrongful discharge claim, which is based on allegations of sexual harassment already rejected by the jury, impermissibly gives her a "second bite of the apple."

Based on the record before us, we conclude that the appellant was not given the opportunity to fully present her claim to the jury. The appellant did not bring a sexual harassment claim against the respondents as a separate cause of action. Rather, her specific allegations of sexual harassment formed the basis of her retaliatory discharge claim. The jury instruction proposed by the appellant which would have attempted to tie the harassment testimony directly to one of the pleaded counts--wrongful discharge--was not given; indeed, it could not have been given once the District Court directed a verdict on the wrongful discharge claim.

Instead, the special verdict form submitted to the jury, which appears to have been based on one offered by the respondents, asked the jury whether the respondents engaged in sex discrimination against the appellant in violation of the Montana Constitution. Jury Instruction No. 19 set forth Article II, Section 4, of the Montana Constitution and stated in part that "[n]either the state nor any person, firm[,] corporation, or institution shall discriminate against any person in the exercise of his civil or

15

political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas." The jury found that the respondents did not engage in sex discrimination against the appellant in violation of the constitution.

It is clear that the appellant testified extensively at trial regarding Engle's acts of sexual harassment, including allegations that Engle made sexual comments and advances to her and fondled her while she was at work. It is also clear that the jury was given the language of Article II, Section 4, of the Montana Constitution and was asked to determine whether the appellant was subjected to sex discrimination by the respondents. From the record before us, however, we are not assured that the jury was provided with the appropriate framework in which to tie, in any meaningful way, the appellant's testimony to the constitutional language provided in Instruction No. 19. Given the language of the special verdict form and Instruction No. 19, we cannot conclude that the jury rejected the appellant's specific allegations of ongoing sexual harassment when it determined that the respondents did not engage in sex discrimination in violation of the constitution. We hold that the District Court erred in directing a verdict in favor of the respondents on the appellant's wrongful discharge claim.

II.

Did the District Court err in directing a verdict in favor of the respondents on the appellant's intentional infliction of emotional distress claim?

The District Court, on its own motion, directed a verdict in

16

favor of the respondents on the appellant's intentional infliction of emotional distress claim. The directed verdict was entered as a matter of law based on the trial court's conclusion that this Court has not recognized the tort of intentional infliction of emotional distress as a separate cause of action. We conclude that the District Court erred in directing a verdict on this claim.

In Doohan v. Bigfork School Dist. No. 38 (1991), 247 Mont. 125, 805 P.2d 1354, we stated that we have not rejected the validity of the tort of intentional infliction of emotional distress as a separate cause of action. Rather, we simply have not addressed a factual situation that would give rise to liability for the tort under the "extreme and outrageous conduct" standard set forth in § 46 of the Restatement (Second) of Torts. Doohan, 247 Mont. at 138, 805 P.2d at 1362. Comment "d" to § 46 explains that the nature of the conduct which gives rise to liability for the tort is extreme and outrageous conduct going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." We further stated in Doohan that whether a plaintiff has introduced sufficient evidence to support a prima facie case for intentional infliction of emotional distress which would survive a motion for a directed verdict is a question of law. Doohan, 247 Mont. at 142, 805 P.2d at 1365.

In light of Doohan, it is clear that the District Court erred in concluding that the appellant's intentional infliction of emotional distress claim was subject to a directed verdict solely on the basis that it was brought as a separate cause of action.

17

The parties had no opportunity to argue whether, under the legal standard set forth in Doohan, the evidence established the threshold level of conduct necessary to survive a motion for a directed verdict. We conclude that it is necessary to remand for such further proceedings on the intentional infliction of emotional distress claim as may be appropriate based on the evidence presented at a new trial in this cause.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

July 27, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Peter Michael Meloy
Meloy Law Office
80 S. Warren
P.O. Box 1241
Helena, MT 59624

Donald Robinson
Attorney at Law
1341 Harrison Avenue
P.O. Box 3328
Butte, MT 59701

William G. Sternhagen
Keller, Reynolds, Drake, et al.
38 South Last Chance Gulch
Helena, MT 59601

Dennis G. Loveless
Attorney at Law
P.O. Box 225
Helena, MT 59624-0225


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy