No. 00-391

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 56

MULTIPLE STIMSON EMPLOYEES,

Petitioner and Respondent,

v.

STIMSON LUMBER CO., BOARD

OF LABOR APPEALS, and MONTANA

DEPARTMENT OF LABOR AND INDUSTRY

Respondents and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert C. Lukes, Garlington, Lohn & Robinson, Missoula, Montana

Kevin Braud, Special Assistant Attorney General, Helena, Montana

For Respondent:

Karl J. Englund, Attorney at Law, Missoula, Montana

Submitted on Briefs: November 30, 2000
Decided: April 5, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Three hundred seventy nine employees of the Stimson Lumber Company filed for unemployment insurance benefits following a week long shutdown of Stimson lumber mills. The Montana Department of Labor and Industry denied their claims. The employees appealed from the Department's decision. An appeals referee determined that the employees were ineligible for unemployment insurance benefits. The employees then appealed to the Board of Labor Appeals. The Board upheld the decision of the referee. The employees filed a petition for judicial review in the District Court for the Fourth Judicial District in Missoula County. The District Court issued an order which reversed the Department's and Board's determination that the employees were ineligible for unemployment benefits. Stimson, the Department, and the Board now appeal from the order of the District Court. We affirm the order of the District Court.

¶2 The parties have raised several issues on appeal. We consolidate them for discussion as follows:

> 1. Did the District Court err when it held that the Department incorrectly concluded that as a matter of law the wages previously paid to the employees were properly imputed to the shutdown period?

> 2. Did the District Court err when it failed to address the issue of whether the employees were "voluntarily unemployed?"

> 3. Did the District Court err when it concluded that this action is not preempted by § 301 of the Labor Management Relations Act?

## FACTUAL BACKGROUND

¶3 Stimson Lumber Company (Stimson) operates lumber mills in Libby and Bonner,

Montana. The three hundred seventy nine employees who are parties to this suit are represented by two local unions affiliated with the Lumber, Production & Industrial Workers Union. Stimson and the local unions are parties to two collective bargaining agreements which govern the terms and conditions of employment at Stimson. The collective bargaining agreements for each mill contain an identical Article 9, which governs the vacation benefits given to each employee.

¶4 Pursuant to Article 9 of the collective bargaining agreement, an employee's eligibility for vacation pay and time off is a function of that employee's longevity with the company and the number of hours worked during the "uniform vacation base year" from November 1 through the following October 31. Employees who have worked for a specified number of years and work a specified number of hours during the vacation base year are entitled to time off in the following year in addition to a specified amount of vacation pay.

¶5 Vacation pay is computed by multiplying the earned hours of vacation pay by the employee's straight hourly wage as of the last payroll period preceding the end of the vacation base year. Most of the employees at the Libby and Bonner mills opt to receive their vacation pay in a lump sum on the first payday following November 1. Those who do not elect to receive their vacation pay in November are able to receive it in increments at a time "associated with the scheduling of their vacation." Employees are not required to take time off as a condition to receipt of their vacation pay. If work is available, an employee may choose to work rather than take time off.

¶6 The collective bargaining agreements gave Stimson the power to unilaterally schedule time off by shutting down the mill. In October 1997, Stimson notified the Bonner and Libby employees that it would shut down the mills for the week ending July 4, 1998. The shutdown affected all but approximately thirty of the over five hundred Bonner employees and all but about twenty four of the approximately three hundred thirty employees at Libby.

¶7 When the employees applied for unemployment benefits, they were instructed by the Montana Department of Labor and Industry (Department) to report their vacation pay as earnings for the week of the shutdown. Most of the employees had received their vacation pay in November 1997 and others had received it at other times prior to the shutdown. The employees who then reported income for the week of the shutdown were denied eligibility by the Department because they were not "totally unemployed" during the shutdown period.

¶8 The employees appealed to a referee who heard the appeal in October 1998. In December of 1998 the appeals referee upheld the Department's determination. The employees then filed an appeal with the Board of Labor Appeals (Board). Following a hearing, the Board upheld the decision of the appeals referee.

¶9 The employees filed a petition for judicial review in the District Court for the Fourth Judicial District in Missoula County. After receiving briefs and hearing argument, the District Court issued an order on March 31, 2000. The District Court's order granted the petition for judicial review, reversed the Department's and Board's determination that the employees were ineligible for unemployment benefits, and remanded to the appropriate administrative agency for decisions on each individual claim. This appeal by Stimson, the Department, and the Board followed.

## STANDARD OF REVIEW

¶10 The applicable standard of review is stated in § 39-51-2410(5), MCA. If the Board's findings of fact are supported by the evidence, they are to be considered conclusive by this Court. *Zimmer-Jackson v. Dep't of Labor and Indus.* (1988), 231 Mont. 357, 360, 752 P.2d 1095, 1097. The standard of review for questions of law is whether the Board's conclusions of law were correct. *Phoenix Physical Therapy v. Unemployment Ins. Div.* (1997), 284 Mont. 95, 99, 943 P.2d 523, 526.

## DISCUSSION

## ISSUE 1

¶11 Did the District Court err when it held that the Department incorrectly concluded that as a matter of law the wages previously paid to the employees were properly imputed to the shutdown period?

¶12 The primary issue in this case is whether the employees are eligible for unemployment benefits for the week of the shutdown. Accordingly, both parties focus their argument on the relationship between "vacation pay" and "time off," concepts which are similarly defined in each collective bargaining agreement. Section 39-51-2104, MCA requires that an individual must be "totally unemployed" to receive unemployment benefits. Section 39-51-2101(1), MCA establishes two requirements for "total unemployment" - the individual must perform no work and must earn no wages during the applicable period. Within this

statutory framework, the critical issue on appeal is whether the employees earned wages during the shutdown period. Should we agree with the Department's conclusion that the employees received vacation pay for the time they were away from work, then those employees earned wages during the shutdown and cannot be considered "totally unemployed" within the meaning of Montana's unemployment benefits scheme.

¶13 Stimson, the Department, and the Board argue that the concepts of vacation pay and time off are inextricably related. According to the Appellants, the vacation pay received by the employees prior to the shutdown was properly attributed to the shutdown period. Section 39-51-201(20)(a)(i), MCA defines wages to include payment for vacations. The Appellants contend that because the employees earned wages during the shutdown, they are ineligible for unemployment benefits pursuant to the requirements of § 39-51-2101(1), MCA. The Appellants further urge this Court to reject the employees' contention that vacation pay and time off are unrelated as contrary to public policy, since the employees have attempted to turn the collective bargaining agreement into an opportunity to receive double pay while on vacation.

¶14 The employees respond that the Department erred when it concluded as a matter of law that the vacation pay received prior to the shutdown had to be imputed to the shutdown period. The employees argue that the collective bargaining agreement does not require that the employees take time off in order to receive vacation pay. Rather, vacation pay is an entitlement once an employee works the specified number of hours during the vacation base year. The employees underscore the distinct separation between the benefits of vacation pay and time off with the following points: 1) Employees need not take time off to receive vacation pay; 2) Employees who take no time off still receive vacation pay; 3) Employees who take no time off receive vacation pay and pay for working; 4) Vacation pay is an entitlement whereas time away from work requires prior approval of the employer; and 5) Vacation pay is paid at a lower hourly rate than employees earn on the date of their time off.

¶15 We agree with the employees' position that the receipt of vacation pay is not contingent on taking time off from work. Pursuant to the collective bargaining agreements, vacation pay is attributed to hours worked during the vacation base year, not for the vacation time actually spent away from work. Therefore, "vacation pay" is payment in exchange for the employees' work in the vacation base year - even though time off may be scheduled unilaterally by the employer when the mill is closed, the vacation pay received is not compensation for time off during shutdown. The employees did not earn wages

during the shutdown which would prevent them from qualifying for unemployment benefits.

¶16 Stimson and the Department next contend that the former version of Rule 24.11.442(5)(b), ARM, which has been amended since this case began, is dispositive on the issue of whether vacation pay must be attributed to the time of the shutdown. At the time of this dispute, the relevant portion of the rule provided: "Payments made for vacation taken by the claimant are attributable to the period covered by the payment." Rule 24.11.442(5)(b), ARM. According to the Appellants, this administrative rule attributes pay received by the employees to the shutdown period. The Appellants further argue that the District Court erred when it held that the rule was neither authorized nor implemented by the statutes at issue - § 39-51-2101, MCA (defining total unemployment) and § 39-51-2104, MCA (defining benefit eligibility).

¶17 However, having already concluded that attributing vacation pay to the shutdown period constituted legal error in this case, we need not determine whether the rule was properly implemented. For the reasons discussed above, the "period covered by the payment" is not the shutdown period but the vacation base year. As a result, Rule 24.11.442(5)(b), ARM is inapplicable.

¶18 Appellants also make much of the fact that the employees in this action not only received vacation pay but actually took time off from work. The Appellants suggest that because the employees did not actually work during the shutdown yet still received vacation pay, the vacation pay must cover the shutdown period. This observation, however, does not affect our conclusion that the collective bargaining agreements clearly correlate vacation pay to the hours worked in the vacation base year. Moreover, the vast majority of the employees in this case received their vacation pay at the end of the vacation base year in November 1997, not in those paychecks "associated with the scheduling of their vacation." Consequently, the Department's conclusion that as a matter of law the vacation pay received prior to the shutdown should be imputed to the shutdown period was incorrect. Therefore, we hold that the District Court did not err when it concluded that the conclusion of the Department was incorrect.

ISSUE 2

¶19 Did the District Court err when it failed to address the issue of whether the employees were "voluntarily unemployed?"

¶20 Stimson argues that the District Court erred when it failed to address the issue of whether the employees, as parties to the collective bargaining agreements, agreed to the mill shutdowns. Stimson contends that because the employees agreed to the shutdown and because § 39-51-2101, MCA requires that the employees be "involuntarily unemployed," the employees in this case do not qualify for unemployment benefits. Rather, says Stimson, the employees consented to the shutdowns in the collective bargaining agreements and are thereby precluded from receiving unemployment benefits for the shutdown period. Stimson relies on case law from other jurisdictions as authority for this proposition.

¶21 The employees argue that the issue was not raised in the prior proceedings. In the event that the issue was raised, the employees argue that their right to unemployment benefits cannot be waived by a collective bargaining agreement. They note that § 39-51-3102, MCA provides that an agreement to waive rights to unemployment benefits is void. Furthermore, § 39-51-3103, MCA provides that no employer shall directly or indirectly require or accept any waiver of any right secured by the unemployment benefit laws.

¶22 We agree with the employees' position. Admittedly, Stimson negotiated for the right to shut down its mills. However, the issue here is whether the collective bargaining agreement can waive rights insured by state law. Despite Stimson's contention that the collective bargaining agreements do not purport to waive unemployment benefits, the interpretation of the provisions for vacation pay and time off put forward by the Appellants would do exactly that. The plain language of §§ 39-51-3102 and -3103, MCA prevents Stimson from attributing vacation pay to the shutdown period and thereby precluding its employees from collecting benefits provided for by state law on the grounds that those employees voluntarily agreed to the shutdowns in the course of negotiating the collective bargaining agreements. To the extent other jurisdictions have different unemployment schemes, judicial interpretation of individual collective bargaining agreements by courts in those jurisdictions is unpersuasive. In Montana, the application of §§ 39-51-3102 and -3103, MCA to the facts before us leads us to conclude that the District Court did not err when it failed to address the issue of whether the employees were "voluntarily unemployed."

## ISSUE 3

¶23 Did the District Court err when it concluded that this action is not preempted by § 301 of the Labor Management Relations Act?

¶24 Stimson also argues that this case is preempted by § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185. Stimson contends that this action requires interpretation of the collective bargaining agreement and the "interplay between several contract provisions," and that, therefore, Section 301 preempts such an action because interpretation of the terms of the contract could have one meaning for state law purposes and another for federal law - "exactly the disparity that Section 301 was designed to preclude." Stimson quotes language from the United State Supreme Court to support its argument that § 301 preemption applies to "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement..." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206.

¶25 While we agree with this characterization of § 301 preemption, we do not agree that preemption applies in this case. The Court in *Allis-Chalmers* additionally discusses the limits of § 301 preemption:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law ... In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Allis-Chalmers, 471 U.S. at 211-12.*

¶26 The cases cited by Stimson, *Anderson v. TW Corp.* (1987), 228 Mont. 1, 741 P.2d 397 and *Foster v. Albertsons*, *Inc.* (1992), 254 Mont. 117, 835 P.2d 720, were actions by the employee against the employer for alleged breach of the employment contract and implied covenant of good faith and fair dealing. In contrast, the present action concerns eligibility for unemployment benefits governed by state unemployment law. There is no question about what the parties agreed to or what legal consequences were intended to flow from a breach of the collective bargaining agreements. As a result, the present matter implicates state rules which establish rights and obligations independent of the labor contract. Therefore, it presents a question of state law and is not subject to § 301 preemption analysis. The inclusion of those state agencies charged with determining unemployment eligibility as parties to this case supports this conclusion. Accordingly, we hold that this action is not preempted by § 301 of the Labor Management Relations Act. We affirm the

order of the District Court and remand to the appropriate administrative agency for decisions on each individual claim.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART