No. 02-059

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 89N

LOIS LENOIR and DARREL J. LENOIR,

        Plaintiffs and Respondents,

     v.

CINDY SELLERS, Yellowstone County TREASURER,
and YELLOWSTONE COUNTY, a Political Subdivision
of the State of Montana,

        Defendants and Appellants.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone, DV 99-372
                The Honorable Robert W. Holmstrom, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

                Kevin R. Peterson, Deputy Yellowstone County Attorney, Billings, Montana
                Kevin Gillen, Deputy Yellowstone County Attorney, Billings, Montana

        For Respondents:

                Robert L. Stephens, Jr., Southside Law Center, Billings, Montana; Benjamin
                J. LaBeau, Attorney at Law, Billings, Montana


                              Submitted on Briefs:  March 13, 2003

                                   Decided:  April 6, 2004

Filed:


                                Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The former Yellowstone County Treasurer, Cindy Sellers (Sellers), and Yellowstone County (hereinafter referred to as "the County"), appeal from the partial denial of a summary judgment motion and various alleged errors, during trial, in the Thirteenth Judicial District Court, Yellowstone County. We affirm.

¶3 We restate the issues on appeal as follows:

¶4 1. Whether the District Court erred in partially denying the County's summary judgment motion.

¶5 2. Whether the District Court erred in allowing the Plaintiff to proceed under the continuing violation doctrine theory and improperly allowed Plaintiff's co-workers to testify about acts of discrimination against them that occurred outside the statute of limitations.

¶6 3. Whether the District Court erred in admitting the Yellowstone County and the Montana Public Employees Association collective bargaining agreement into evidence and whether testimony, regarding the same, should not have been allowed.

¶7 4. Whether the District Court abused its discretion in permitting a Plaintiff's witness to testify and restricting the County's cross-examination of another of Plaintiff's witnesses.

2

¶8    5.  Whether the District Court erred in denying Lenoir's request for injunctive relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶9    In 1995, Lois Lenoir (Lenoir) began working as a motor vehicle clerk in the County Treasurer's Office.  At the time, Sellers was the County Treasurer.  Beginning in 1997, Lenoir started working on Max Lenington's (Lenington) campaign for Yellowstone County Treasurer.  She painted campaign signs and passed out campaign literature.  Lenoir enjoyed a good relationship with Sellers until Sellers found out that Lenoir was working on Lenington's campaign.  Lenoir testified that Sellers treated Lenoir differently from other people in the office who supported Sellers' bid to remain County Treasurer.

¶10    Lenoir testified that other workers were given preference for days off; that Lenoir had to go to her doctor's appointments on her days off of work while other workers did not have to comply with that rule; that Sellers manipulated the job selection process for promotion in order to deny Lenoir an opportunity to be promoted; that Sellers embarrassed Lenoir in front of the office when Sellers questioned Lenoir about some vacation time Lenoir had taken and accused Lenoir of changing her time card; and that Sellers also embarrassed Lenoir when she questioned Lenoir about why Lenoir had not signed a sympathy card.  In addition, Lenoir also testified that her health had deteriorated due to stress from the harassment.  Lenoir was diagnosed with a blood condition, (ITP) in 1995 when she first started working at DMV.  At the end of Lenoir's probationary period at the DMV, her condition was in remission and she was not taking any medication.  However, after the harassment commenced, her symptoms returned and her condition worsened.

3

¶11 After this disparate treatment began, Lenoir filed a discrimination complaint with the Human Rights Bureau in August of 1998, which was dismissed. Lenoir subsequently filed another discrimination and retaliation complaint in March of 1999. This complaint was also dismissed. In May, Lenoir, and her husband, then brought complaint against the County in District Court. Count one of the complaint alleged that the County had violated §§ 49-2-308(1)(c) and 49-1-102(1)(a), MCA,[1] and that the County had intentionally or negligently inflicted emotional distress upon Lenoir. Count two alleged that the County had violated Lenoir's civil rights contrary to 42 U.S.C. § 1983. Count three alleged that Lenoir's husband had suffered an impairment of his marital relationship with Lenoir.

¶12 Before the trial, both parties stipulated to the dismissal of count three without prejudice and Lenoir became the sole plaintiff. The County then moved for summary judgment with regard to the remaining counts. The District Court granted the motion with regard to Count two but denied it with regard to the claims under §§ 49-2-308 and 49-1-102, MCA, and the intentional or negligent infliction of emotional distress claims. A jury trial commenced on June 25, 2001 and after Lenoir rested, the District Court dismissed the intentional or negligent infliction of emotional distress claim. Based on the remaining claim, the jury returned a verdict of $40,000 for Lenoir and in a subsequent hearing, the District Court awarded Lenoir $32,525 in attorney's fees. The County appeals from the partial denial of the summary judgment motion and various alleged court errors made during trial.

---

[1]Lenoir referred to the statute as § 49-2-102, MCA, in her complaint but the appropriate statute is § 49-1-102(1)(a), MCA.

4

**ISSUE ONE**

¶13    *Whether the District Court erred in partially denying the County's summary judgment motion.*

¶14    Regarding the County's first argument, the County appears to contend that the District Court should have granted summary judgment as to Lenoir's claims under §§ 49-2-308(1)(c) and 49-1-102(1)(a), MCA, in the County's favor because Lenoir did not allege in her complaint, deposition, or her responses to written discovery requests, any discrimination that would be considered discrimination, political or otherwise, under §§ 49-2-308(1)(c) and 49-1-102(1)(a), MCA.   Lenoir counters that the State's contention must fail because the language of § 49-2-308(1)(c) is broad enough to include "any form of retaliation or harassment that is associated with the expression of political beliefs."

¶15    Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P. 2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903**.** To succeed on a summary judgment motion, the County would have had to have demonstrated that no genuine issues of material fact existed as to Lenoir's political discrimination claims.  Rule 56(c), M.R.Civ.P.

¶16    The District Court found that there were "genuine issues of material fact regarding whether [Lenoir] was discriminated against in the workplace pursuant to § 49-1-102, MCA,

and § 49-2-308, MCA." We agree with the District Court. At the time the summary judgment motion was made, Lenoir had alleged that Sellers knew Lenoir supported Lenington; that Sellers treated Lenoir differently from Lenoir's co-workers who supported Sellers in the election; and that Sellers subjected Lenoir to unfair criticisms in front of the staff and public and that as such, under § 49-1-102 and § 49-2-308, MCA, Lenoir had been discriminated against.

¶17 The record clearly indicates that there were material facts at issue as to whether Lenoir was actually discriminated against for her political support of Lenington. As such, it would have been error for the District Court to grant summary judgment with regard to §§ 49-2-308 and 49-1-102, MCA. Accordingly, the District Court properly denied, in part, the County's summary judgment motion.

**ISSUE TWO**

¶18 *Whether the District Court erred in allowing the Plaintiff to proceed under the continuing violation doctrine theory and improperly allowed Plaintiff's co-workers to testify about acts of discrimination against them that occurred outside the statute of limitations.*

¶19 In a conclusory fashion, the County seems to argue that the District Court erred in allowing third-party witnesses, Lenoir's co-workers, to testify about Sellers' prior acts of discrimination against them under the continuing violation doctrine without meeting the *State v. Just* (1979), 184 Mont. 262, 602 P.2d 957 and *State v. Matt* (1990), 245 Mont. 208, 799 P.2d 1085 requirements. The County further argues that the District Court erred in allowing the third-party witnesses to testify because where the continuing violation doctrine applies,

6

only the person's testimony who made the claim can be used for instances of discrimination beyond the 180 days specified in § 49-2-501(4)(a).

¶20    Lenoir's response, though lengthy, is, likewise, cursory.  The crux of her argument appears to be that the County was not "ambushed" with the continuing violation doctrine. She opines that it was the District Court, *sua sponte*, that brought the issue of testimony outside the 180-day window to the forefront and that the County knew well before trial and failed to object to the third-party witnesses and the use of discriminatory conduct outside the statute of limitations of § 49-2-501, MCA.

¶21    The fashion in which this issue was addressed in the parties' briefs makes it difficult to ascertain exactly what the parties' arguments are in relation to the facts.  Rule 23(a)(4), M.R.App.P requires that the parties brief and support their arguments with sufficient clarity that this Court can adequately conduct its appellate review.  *See Cutler v. Jim Gilman Excavating, Inc.*, 2003 MT 314, ¶ 22, 318 Mont. 255, ¶ 22, 80 P.3d 1203, ¶ 22.  That has not been accomplished here.  As such, we decline to address the merits, assuming there are any, of this issue.

**ISSUE THREE**

¶22 *Whether the District Court erred in admitting the Yellowstone County and the Montana Public Employees Association collective bargaining agreement into evidence and whether testimony, regarding the same, should not have been allowed.*

¶23 During the course of the trial, the agreement was referenced by both parties and admitted into evidence. The County asserts that where a state law claim requires a collective bargaining agreement to be construed, the claim is preempted by § 301 of the Labor Management Relations Act. Lenoir concludes, from our decision in *Foster v. Albertsons, Inc.* (1992), 254 Mont. 117, 835 P.2d 720, that issues of unlawful discrimination are purely factual questions and so § 301 preemption does not apply.

¶24 We conclude that Lenoir's argument is persuasive in this instance. In *Foster*, the plaintiff had brought a wrongful discharge claim based, in part, on sexual discrimination. *Foster*, 254 Mont. 117, 835 P.2d 720. We held that the requirements to show retaliatory discharge were all "purely factual questions," and, as such, the appellant's wrongful discharge claim was "independent of the collective bargaining agreement for purposes of § 301 preemption." *Foster*, 254 Mont. at 127, 835 P.2d at 727.

¶25 This court will not overturn the District Court's evidentiary determination absent an abuse of discretion. *State v. Bingman*, 2002 MT 350, ¶ 31, 313 Mont. 376, ¶ 31, 61 P.3d 153, ¶ 31. In addition, discretionary trial court rulings, such as trial administration issues and scope of cross-examination, are also reviewed to determine whether the District Court abused its discretion. *State v. Insua*, 2004 MT 14, ¶ 13, 319 Mont. 254, ¶ 13, 84 P.3d 11, ¶ 13.

8

¶26 Under § 49-1-102(1)(a), MCA, employees have the right to "hold employment without discrimination," and Lenoir needed to show that the State had discriminated against her "in compensation or in a term, condition, or privilege of employment because of [her] political beliefs." Section 49-2-308(1)(c), MCA. After the County referenced the agreement in it's opening statement and cross-examined Lenoir about sick leave and the agreement, the collective bargaining agreement was admitted as evidence to show that the sick leave provision was discriminatorily applied to Lenoir. Whether Lenoir was discriminated against under § 49-2-308(1)(c), MCA, was a factual question and admitting the agreement with regards to the sick leave provision to show that discrimination had occurred, did not require the jury to interpret the collective bargaining agreement.

¶27 Accordingly, the District Court did not abuse its discretion in allowing testimony regarding the agreement or in admitting the agreement into evidence.

### ISSUE FOUR

¶28 *Whether the District Court abused its discretion in permitting a Plaintiff's witness to testify and in restricting the County's cross-examination of another of Plaintiff's witnesses.*

¶29 Before this trial commenced, Lenoir sought to consolidate her trial with Agnes Kovach (Kovach). Kovach, who worked with Lenoir for a time in the County Treasurer's Office, was also suing the County regarding disparate treatment Kovach had received from Sellers. While the District Court denied consolidation, the District Court did permit Lenoir to call Kovach as a witness during Lenoir's trial. In addition, the District Court also allowed Lenoir to call Sellers' ex-husband, Tony Sellers, as a witness.

9

¶30 As to Kovach, the County, again, makes a very conclusory argument. Without citing any precedent or any documents in the record, the County argues that because the District Court would not consolidate Kovach's and Lenoir's trials, and because Kovach's testimony was covered by a release and the District Court had ruled that matters covered by a release could not be the subject of the District Court suit, the District Court should not have permitted Kovach to testify.

¶31 Lenoir's answer brief is devoid of a response. That being said, we find no fault with the District Court's decision to allow Kovach to testify.

¶32 As noted earlier, discretionary trial court rulings are reviewed to determine whether the district court abused its discretion. *Insua*, ¶ 13. In light of the fact that the District Court was in a better position to determine whether it was appropriate to permit Kovach to testify and because the parties failed to adequately address this issue, we hold that the court did not abuse its discretion in permitting Kovach to testify.

¶33 Concerning Tony Sellers's testimony, the County argues that the District Court erred in not allowing the County to question Tony Sellers about his motive and bias for testifying against Sellers and about a psychological report that was referenced in the Sellers' divorce proceedings. Lenoir counters that the County was afforded an appropriate means to impeach Tony Sellers and that the County, in questioning Tony Sellers about the psych evaluation, was attempting to inappropriately impeach Tony Sellers under Rule 608(b), M.R.Evid.

¶34 During direct examination, Tony Sellers testified that he overheard several negative conversations about Lenoir that Sellers had had with a couple of women with whom Sellers

10

and Lenoir worked. On cross-examination, the County asked Tony Sellers whether the divorce proceedings were initiated before or after he overheard the conversations. Tony Sellers testified that the divorce petition was filed during the same time period as the conversations. Tony Sellers further testified that he heard these conversations while listening at doors, listening in through windows, and that he tape recorded some of Sellers' conversations for the "purpose of . . . recording the demeanor of Cindy Sellers with [their] . . . five-year-old son." In addition, the District Court allowed Tony Sellers to affirmatively testify that he had undergone a psych evaluation as part of the divorce proceedings. However, the District Court did not permit the County to ask Tony Sellers what he had been diagnosed with as a result of the psych evaluation. The District Court did not want Tony Sellers to be cross-examined "on something found by the physician." The physician, a Dr. Recor, however, according to the County's own attorney, "chose to appear in person to testify regarding Mr. Sellers."

¶35 The County seems to argue that it was "foreclosed from calling Dr. Recor to rebut any denial of his findings," and that it was "prejudiced because no rebuttal witness could be called because the requisite questions could not be asked of the witness." It appears that what the County was really trying to do was improperly impeach Tony Sellers's credibility. The County surmises that it was not able to question Tony Sellers's motive or bias for testifying against Sellers, but the record clearly indicates that the County was able to establish that Tony Sellers's monitoring of Sellers' negative conversations began during the same time period as the divorce proceedings. In addition, it appears that the only real

11

restriction the District Court placed on the County was that Tony Sellers could not testify as to what Dr. Recor's diagnosis was. By the County's own admission, Dr. Recor was present in court and ready to testify regarding Tony Sellers. The County could have called Dr. Recor to the stand to gain the answer to the question it sought. However, the County chose to not do so. The County cannot now claim error for its failure to appropriately follow-up within the parameters set out by the District Court.

¶36 Accordingly, we conclude that the District Court did not abuse its discretion when it limited the County's cross-examination of Tony Sellers.

## ISSUE FIVE

¶37 *Whether the District Court erred in not granting Lenoir's request for injunctive relief.*

¶38 In July of 2001, Lenoir filed a motion for temporary and injunctive relief to prohibit Sellers from taking adverse or disciplinary action against Lenoir such as initiating any dismissal proceedings or any retaliatory action in connection with the claim. The District Court denied the motion, and Lenoir, in her brief, asserts that it was error for the District Court to deny the motion. The County contends that Lenoir has not filed a cross-appeal in this case and, as such, she is precluded from raising the injunctive relief issue on appeal.

¶39 We agree with the County. In *Neumann v. Rogstad* (1988), 232 Mont. 24, 757 P.2d 761, we held that "[i]n order to preserve an issue not raised by an appellant, it is necessary for the personal representative as respondent to file a notice of cross-appeal." In a later case, we cited the aforementioned language as precedent and concluded that this Court "only has

12

jurisdiction over those issues addressed in the appeal or a properly filed cross appeal." *Joseph Eve & Co. v. Allen* (1997), 284 Mont. 511, 515, 945 P.2d 897, 898. If Lenoir wished to raise the injunctive relief issue, she should have filed a cross- appeal. Mere insertion into respondent's brief of another issue for this Court to dispose of does not qualify as a cross-appeal. Because this issue was not properly presented by the filing of a notice of cross-appeal, we will not address the merits of the claim.

¶40 Therefore, we affirm the decision of the District Court.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER