No. 87-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ALBERT H. NEUMANN,

       Plaintiff and Appellant,

  -vs-,

SALLY MARLENE ROGSTAD, Personal
Representative of the Estate of
Isabel Neumann, Deceased,

       Defendant and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District
              In and for the County of Cascade
              The Honorable John M. McCarvel, Judge presiding

COUNSEL OF RECORD:

    For Appellant:

        Randy Winner; Flaherty and Winner, P.C., Great Falls, MT

    For Respondent:

        Joseph Marra; Marra, Wenz, Johnson and Hopkins
        Great Falls, MT

Submitted on Briefs:  March 24, 1988

Decided:  May 6, 1988

Filed:  **MAY 6 - 1988**

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff appeals the order of the District Court of the Eighth Judicial District, Cascade County, granting summary judgment in favor of defendant. We affirm.

The issues before the Court are:

1. Did the District Court correctly determine that the plaintiff failed to properly file a claim against decedent's estate?

2. Did the District Court correctly determine that summary judgment was proper?

3. Did the District Court err when it failed to grant costs and attorney fees pursuant to § 72-12-206, MCA?

Albert Neumann (Albert) and Isabel Neumann (Isabel) were married in 1932. During the early 1940's, Albert and Isabel began purchasing unimproved lots in and around the Great Falls area. As the couple prospered, they also engaged in numerous other business ventures. The titles to these business enterprises were held both jointly and separately.

Albert and Isabel's manner of holding property changed drastically in the mid-1960's, however. At that time, Albert was involved in a bar brawl in which his opponent suffered a broken arm. In an attempt to insulate himself from a pending civil suit, Albert transferred all of his property to Isabel. The property was not transferred back to Albert following settlement of the case.

Although Albert and Isabel enjoyed a measure of business success throughout their years together, the couple's attempt at marriage was less successful. After numerous separations and several aborted divorce proceedings, their marriage was finally dissolved in 1973. As a result of Albert's failure to appear at the proceeding, Isabel received the majority of

the couple's property. Isabel also excluded Albert from her will shortly thereafter.

Unlike most couples, the divorce did not adversely affect Isabel and Albert's relationship. If anything, the divorce strengthened the relationship. Isabel and Albert continued to spend a great deal of time together and engaged in several joint business ventures. In addition, if rental properties owned by Isabel needed maintenance, Albert provided or arranged for it, usually at little or no charge for his labor.

Prior to her death in 1986, Isabel's illness severely limited the extent of her activities. During this period, Albert provided Isabel with transportation, companionship, household services and business assistance. As a consequence, Isabel is alleged to have promised Albert that she would grant him a one-half interest in the property the couple had previously held jointly. Isabel failed to transfer the property or alter her will, however.

Albert filed a creditor's claim against Isabel's estate on December 19, 1986. Following denial of his claim, Albert filed suit alleging common law marriage, a claim for services rendered in the amount of $35,200.00, constructive trust, and an oral contract theory. Albert subsequently dropped the common law marriage claim and instead alleged that the 1973 divorce decree was inadequate.

This appeal followed the District Court's order granting summary judgment in favor of the defendant. Although the District Court's order extinguished all four counts of Albert's complaint, the argument presented by counsel only addresses the propriety of the dismissal of the claim for services rendered. We therefore limit our discussion accordingly.

The policy underlying Montana's Uniform Probate Code (UPC) is the fast and efficient settlement of estates. Section 72-1-102(2)(c), MCA. Consistent with this goal, § 72-3-803, MCA, provides that all claims against an estate must be made within four months after the date of the first publication of notice to creditors. The failure to make a claim within the brief statutory period thereafter bars the action.

The UPC is also designed to simplify the probate process. See § 72-1-102(2)(a), MCA. Section 72-3-804, MCA, is a reflection of this legislative design. It provides, in pertinent part:

> Claims against a decedent's estate may be presented as follows:
>
> (1) The claimant shall mail to the personal representative return receipt requested a <u>written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed</u> or may file a written statement of the claim, in the form prescribed by rule, with the clerk of the court . . .. (Emphasis added.)

In an attempt to satisfy § 72-3-804, MCA, Albert submitted a document entitled "Claim Against Estate," wherein he listed his name, his attorney's address, and an allegation that the estate was indebted to him in the amount of $35,200.00 for services performed as set out in schedule "A," reproduced below.

> The services provided for Isabel Neumann by Albert H. Neumann, include such things as:
>
> Washing windows; mowing lawns; planting flowers; house cleaning; clothes washing; bathing Isabel Neumann; buying groceries; filling Isabel's portable oxygen bottle; providing a vehicle and driving Isabel to the doctor, the bank, the accountant, and wherever she wanted to go; buying prescription drugs; doing her Christmas shopping; taking her out to dinner and bringing meals to her at home;

balancing her checking account for her; working with her on joint investments; caring for her parents' graves; advising her on personal problems; repairing and maintaining real property for her; constructing the buildings at 108 20th Street South, the building in which the Nugget Bar is located, and the metal quonset building behind the Nugget Bar; and managing and maintaining the rental properties for Isabel.

The defendant argued, and the District Court apparently agreed, that Albert's claim for services failed to meet the statutory requirements of § 72-3-804, MCA, because the claim failed to sufficiently describe what services he allegedly rendered and when he allegedly rendered them. We disagree.

It is not the function of this Court to insert that which has been omitted. Section 1-2-101, MCA. By its terms, § 72-3-804, MCA, does not require that a claimant specify the exact date a debt was incurred nor does the statute require the claim be set forth in minute detail. Rather, a claimant need only set forth the basis of a claim, the amount claimed, and his or her name and address. While Albert's claim might have been more specific, it still satisfied the statutory requirements. The duty to attempt to conduct further inquiry, within reasonable parameters, then passed to the personal representative.

"The purpose to be accomplished by our statutory provisions relating to presentment of claims against estates is to bring all claims to the knowledge of the executor or administrator so that proper inquiry and investigation may be made regarding their validity, with the view of enabling the executor or administrator to pass intelligently upon them." Wunderlich v. Holt (1929), 86 Mont. 260, 269, 283 P. 423, 425. Generally, the form of a claim is not determinative. All that is required is that the estate receive reasonable notice of the claim by the required time so that the personal

representative can determine the validity of a claim. Peterson v. Marston (Minn. 1985), 362 N.W.2d 309, (construing identical statutory language); Strong Bros. Enterprises v. Estate of Strong (Colo.App. 1983), 666 P.2d 1109 (construing identical statutory language); Notar v. State Farm Mutual Auto Insurance Co. (Fla.App. 1983), 438 So.2d 531. We find Albert's claim was sufficient to provide notice of the alleged debt.

However, the District Court also determined that Albert failed to provide sufficient proof in support of his claim to raise a genuine issue of material fact. We agree.

Throughout Albert's deposition, he contended that although legally divorced, he and Isabel were in actuality husband and wife; that he failed to initiate legal proceedings for property allegedly his due to his affection for Isabel; and that "they could have taken my life and it still would have been hers." In addition, the record is silent as to whether he ever entered an agreement with Isabel to provide services; the date, value or hourly rate for such services; and whether he ever billed Isabel for such services. Albert's belated determination that he "believes" he would charge for getting groceries and running errands is not sufficient to raise a genuine issue of material fact.

The courts have long struggled with belated claims by family members and others against a person whose "mouth is stopt with dust." See Wunderlich, 86 Mont. at 271, 283 P. at 425. Generally, the law presumes that services are given and rendered with the expectation of being paid. San Antonio v. Spencer (1928), 82 Mont. 9, 13, 264 P. 944, 945. However, services provided by family members or through some other significant relationship give rise to an entirely different presumption.

> "It is certainly true that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services were given and rendered in the expectation of being paid for and will imply a promise to pay what they are reasonably worth." [Citation omitted.] To this rule there is a generally acknowledged exception . . .: "In the case of near relatives or members of the same family, living together as one household, the law regards personal services rendered, and board or lodging or other necessaries and comforts furnished, as gratuitous, and in the absence of an express agreement to pay for the same or facts and circumstances from which such an agreement can be inferred, there can be no recovery therefor. . . ."

San Antonio, 82 Mont. at 13, 264 P. at 945.

A similar rule has been applied in a situation in which kindness and affection motivated the rendering of services.

> [P]laintiffs indicated that they performed the services out of kindness for an elderly neighbor. However laudable plaintiffs' action on behalf of decedent may have been, there was no implied contract of payment since there was no understanding between plaintiffs and decedent that plaintiffs would receive payment as consideration for the services they performed. In denying a plaintiff's contract claim against an estate for services rendered to a decedent, the California Court of Appeals stated:

> ". . . If at the time the services were originally rendered they were intended to be gratuitous or as an accommodation, motivated by friendship, kindness, or some other significant relationship existing between the parties, and were tendered without any expectation of remuneration, they cannot afterwards be converted into an obligation to pay their reasonable value under the theory of an implied contract . . ."

Ziegler v. Kramer (1977), 175 Mont. 236, 239, 573 P.2d 644, 645.

Application of the Ziegler and San Antonio rationales clearly demonstrates the inadequacy of Albert's proof.

- 7 -

Although not legally married to Isabel, Albert testified that the couple were in fact acting as husband and wife. He also testified repeatedly that his love and affection for Isabel had precluded an action for large sums of money rightly his. Under such circumstances, the failure to allege an express contract or to present a written copy of the same is fatal to his claim. Albert's uncertain, belated and unilateral determination that he should be compensated for services rendered to a person unable to answer is not sufficient to raise a genuine issue of material fact.

Finally, it is alleged that the District Court erred when it failed to grant the defendant costs and attorney fees pursuant to § 72-12-206, MCA. We find the issue is not properly before us.

We note that Albert did not raise the issue of attorney fees. In order to preserve an issue not raised by an appellant, it is necessary for the personal representative as respondent to file a notice of cross-appeal. Rule 5(a), M.R.App.P., provides in pertinent part:

> (3) If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within fourteen days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 5(a), whichever period last expires.

The respondent's failure to so file is thus fatal to his claim.

Respondent's claim is not saved by Rule 14, M.R.App.P. Rule 14 merely provides the opportunity for a respondent to raise an issue on appeal. It does not eliminate the procedural prerequisites necessary to perfect an appeal. In a similar situation, we have stated:

> Finally, wife contends that the District Court erred in refusing to grant attorney fees and costs.

We cannot review this issue, however, because wife failed to file a cross-appeal.

> "Although Rule 14 (M.R.App.Civ.P.) provides for review of matters by cross-assignment of error, this does not eliminate the necessity for cross-appeal by a respondent who seeks review of rulings on matters separate and distinct from those sought to be reviewed by the appellant." Johnson v. Tindall (1981), 195 Mont. 165, 169, 635 P.2d 266, 268.

Marriage of Johnson (1983), 205 Mont. 259, 263, 667 P.2d 438, 440.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices