No.  92-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

WILLIAM J. MONTANYE,

           Petitioner and Appellant,

     -v-

STATE OF MONTANA,

           Respondent and Respondent.

FILED

DEC 06 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

           For Appellant:

                Gregory A. Jackson, Jackson & Rice, Helena, Montana

           For Respondent:

                Hon. Joseph P. Mazurek, Attorney General, Peter
                Funk, Assistant Attorney General, Helena, Montana


                              Submitted on Briefs:  July 1, 1993

                                           December 6, 1993
                                  Decided:

Filed:



_____
            Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment of the First Judicial District Court, Lewis and Clark County, revoking petitioner's driving license and finding that the New York law of Driving While Ability Impaired by Alcohol is substantially similar to the Montana law of Driving Under the Influence of Alcohol. We affirm.

The only question on appeal is whether the District Court erred in determining that the New York law is substantially similar to the Montana law so that petitioner's driving license was properly revoked under Montana law?

William J. Montanye (Montanye) is a Montana resident who was cited in the state of New York on February 29, 1992, for driving while intoxicated. Montanye was convicted on March 6, 1992, of driving while ability impaired, which is a charge of lesser degree than the New York charge of driving while intoxicated. Montanye was assessed a $350 fine and $250 cost, and his license was suspended for 90 days.

On April 9, 1992, New York authorities notified the Motor Vehicle Division of the Montana Department of Justice of Montanye's conviction. This action was taken pursuant to the Uniform Driver License Compact which both New York and Montana have adopted. See § 61-5-401, MCA, which sets forth the Compact in Articles I through IX and which is cited as "Driver License Compact." The Driver License Compact requires that states are to report convictions of charges occurring in their states to the home state of a violator.

2

Following notification, the Montana Department of Justice, Motor Vehicles Division, suspended Montanye's Montana's driver's license as of April 9, 1992, for a period of six months. On May 1, Montanye initiated this action in District Court seeking review of the driver's license suspension action. Montanye also sought a stay of the suspension which was granted on May 6, 1992.

The District Court, in an order filed October 9, 1992, determined that, under the Driver License Compact, the New York offense of Driving While Ability Impaired is substantially similar to the Montana offense of Driving Under the Influence of Alcohol (DUI). Further, the court determined that Montana should properly suspend Montanye's license for six months, less the 90 days for which Montanye had his driving privileges suspended in New York.

Because of the substantive changes made in the statute by amendments, we set forth § 61-8-401, MCA (1991), as follows:

**61-8-401. Persons under the influence of alcohol or drugs.** (1) It is unlawful and punishable as provided in 61-8-714 and 61-8-723 for any person who is under the influence of:

(a) alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;

. . .

(d) alcohol and any dangerous or other drug to drive or be in actual physical control of a vehicle within this state.

(2) The fact that any person charged with a violation of subsection (1) is or has been entitled to use alcohol or such a drug under the laws of this state does not constitute a defense against any charge of violating subsection (1).

(3) "Under the influence" means that as a result of taking into the body alcohol, drugs, or any combination thereof, a person's ability to safely operate a motor vehicle has been diminished.

(4) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been

3

committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time alleged, as shown by analysis of the person's blood, urine, or breath, shall give rise to the following inferences:

(a) If there was at that time an alcohol concentration of 0.05 or less, it may be inferred that the person was not under the influence of alcohol.

(b) If there was at that time an alcohol concentration in excess of 0.05 but less than 0.10, that fact shall not give rise to any inference that the person was or was not under the influence of alcohol but such fact may be considered with other competent evidence in determining the guilt or innocence of the person.

(c) If there was at that time an alcohol concentration of 0.10 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable.

(5) The provisions of subsection (4) do not limit the introduction of any other competent evidence bearing upon the issue of whether the person was under the influence of alcohol, drugs, or a combination of the two. (Emphasis supplied.)

As emphasized, § 61-8-401(3), MCA, defines a person under the influence of alcohol as one whose ability to safely operate a motor vehicle has been diminished. In comparison, N.Y. Veh. and Traf. Law § 1192.1, provides:

**Driving while ability impaired.** No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

Separate from the Driver License Compact provisions, Montana § 61-5-204, MCA, allows suspension of a resident's license upon conviction in another state, stating in pertinent part:

**Suspending resident's license upon conviction in another state.** The department is authorized to suspend or revoke the driver's license . . . of any resident of this state . . . to drive a motor vehicle in this state upon receiving notice of the conviction of the person in another jurisdiction of an offense in that jurisdiction which, if committed in this state, would be grounds for

4

the suspension or revocation of the driver's license . .
.

Montana law provides that conviction of a DUI carries with it a fine, imprisonment, and possible revocation or suspension of license. Montanye was convicted in New York of driving while impaired by alcohol which carries with it a potential punishment of a fine, imprisonment or suspension of license.

Both laws deal with the driver's diminished ability to drive while under the influence of alcohol. Both states provide for suspension of driver's license as a punishment. The suspension is 90 days in New York and six months in Montana. See § 61-5-208, MCA. Montanye contends that the two sets of laws are totally dissimilar and that he should not have his license suspended here.

The declaration of policy in the Driver License Compact adopted by both states provides a guide to the policy behind the Compact, providing in § 61-5-401(1)(c), MCA:

> the continuance in force of a license to drive is predicated upon compliance with laws and ordinances relating to the operation of motor vehicles in whichever jurisdiction the vehicle is operated.

The law in New York prohibits a driver from driving when alcohol impairs his or her ability to drive. The Montana law prohibits a driver from operating a car when his or her ability to drive safely is diminished.

As pointed out by the District Court, while the New York statute does not define impaired or intoxicated, in the case of People v. Miller (1975), 373 N.Y.S.2d 312, 314, the New York court defined intoxication:

5

> Therefore, this court finds that it was the intention of the Legislature that a person be convicted of driving while intoxicated when it is established that he has consumed enough alcohol so that his physical and mental control are markedly <u>diminished</u>; or putting it another way, that <u>his judgment and ability to operate a motor vehicle are adversely affected to a substantial degree</u>. (Emphasis added.)

If driving while intoxicated is defined as having one's physical and mental abilities "markedly" diminished, driving while alcohol impaired indicates that the degree of impairment is somewhat less than markedly diminished.

The District Court here compared the similarities and differences between the Montana and New York law and concluded that while there were a few differences, the offenses are substantially similar. The District Court emphasized that the conviction of either offense could result in fine, imprisonment and loss of driving privileges. It also emphasized that under New York law, a Montana DUI conviction would be deemed driving while impaired and therefore would come within the Driver License Compact provisions. The District Court further concluded that the fact that the Montana violation is a misdemeanor and the New York violation is a traffic offense is not a significant difference. It pointed out that Montana law requires finding that the driver has a diminished capacity to operate his vehicle safely. New York law requires that impairment be found when as a result of the ingestion of alcohol, a driver's control of a vehicle is less than would be expected by a reasonably prudent driver. The court concluded that a reasonably prudent driver also would be a safe driver. The District Court

6

therefore concluded that the New York offense of driving while impaired is similar to Montana's driving under the influence laws.

Under the Driver License Compact Montana is required to determine if the offenses described in New York are of a "substantially similar nature." Driver License Compact, Article IV, (3), § 61-5-401, MCA. We affirm the District Court's conclusion that the New York offense of driving while impaired is substantially similar in nature to the Montana law of driving under the influence.

The dissent contends that since conviction in New York while "impaired" requires a lesser degree of intoxication than Montana, the offenses are not substantially similar. The dissent seems to contend that under City of Helena v. Davis (1986), 222 Mont. 492, 723 P.2d 224, the only way in which a conviction can be obtained is to spell out the alcoholic concentrations as set forth in the present § 61-8-401(4), MCA. That analysis ignores the changes subsequently made to our statute after Davis was decided.

As noted, the 1991 § 61-8-401(4), MCA, provides for various inferences which are to be applied to alcohol concentrations at various levels. Apparently the dissent is suggesting that if these elements are not presented within jury instructions, then under Davis there cannot be impairment which is different than the state of New York. We disagree with that analysis.

As a result the 1987 amendment to § 61-8-401, MCA, Montana is no longer limited to proof of alcohol concentration in a person's blood, urine or breath. While previous subsections of § 61-8-401,

7

MCA, contain the cut-off levels of blood alcohol content, the 1987 amendment has added a definition by which "under the influence" can be defined not by a chemical analysis of the blood, but by the observation that a "person's ability to safely operate a motor vehicle has been diminished."

This 1987 amendment undermines any controlling affect of the Davis decision. In Davis, we determined that the instruction given to the jury which attempted to define "under the influence" was not correct because such an evaluation had become more precise. In 1987, the definition of "under the influence" underwent another change, this time it grew to include a definition which considered the driver's ability to drive and not just his blood alcohol content.

The Davis reasoning concerns an outdated 1955 instruction erroneously given to the jury in the 1986 case. That instruction did not take into consideration the assumptions raised when blood alcohol content was measured. Subsequent to 1955, the legislature added assumptions as to ability to drive based upon the alcoholic content of a person's blood. The law had been changed to reflect those specific levels of alcoholic content in the blood. Thus, the Davis Court was correct in reversing because the jury instruction did not reflect the current assumptions contained in the law.

In 1987, the legislature determined that "under the influence" is not exclusively determined by the blood's alcoholic content. Such content levels create inferences. Now, "under the influence"

8

is defined by the diminution of a person's ability to drive a vehicle.

This is exactly what the New York law concerning "impairment" was meant to do. It was meant to give police a tool to determine when a person's ability to drive was diminished, despite the lack of breath analysis at the scene. People v. Cruz (1979), 423 N.Y.S.2d 625, 628. We conclude that the additions to the Montana statutes are comparable to the additions to the New York statutes.

The Driver License Compact makes it reciprocal for states adopting the uniform law to comply with the traffic laws in sister adopting states. Montanye had not complied with New York's traffic laws. He was convicted of driving while impaired because of alcohol and had his driving privileges revoked for 90 days. This is half the time required by Montana law for a suspended license. The District Court concluded that Montanye's driver's license could not be suspended for more than a total of six months and therefore subtracted from the Montana suspension the New York revocation of 90 days. The State of Montana has not cross-appealed the issue of length of time for license revocation and we will not, therefore, consider this issue on appeal. In order to preserve an issue not raised by appellant, respondent must file notice of cross appeal. Rules 5(a), 14, M.R.App.P.; Neumann v. Rogstad (1988), 232 Mont. 24, 757 P.2d 761.

We hold that the District Court did not err in determining that the New York law is substantially similar to the Montana law

so that petitioner's driving license was properly revoked under Montana law.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's opinion in this case.

The majority's opinion has not cited New York's statute in its entirety. In its entirety, it provides for three separate offenses which relate to operating motor vehicles under the influence of alcohol. They are the following:

> 1. Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

> 2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has a .10 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this Article.

> 3. Driving while intoxicated. No person shall operate a motor vehicle while in an intoxicated condition.

N.Y. Veh. & Traf. Law § 1192.

Paragraphs 2 and 3 of New York's statute are substantially similar to §§ 61-8-406 and -401, MCA, respectively. However, defendant was convicted of subparagraph 1 of the New York law. There is no counterpart in Montana for that paragraph.

The New York statute does not define the degree to which a person must be under the influence of alcohol before he or she is, as a matter of law, "impaired." The majority cites *People v. Miller* (1975), 373 N.Y.S.2d 312, 314, for the principle that "intoxicated" means that a driver's ability to operate a vehicle is "adversely affected to a substantial degree." However, in a more recent

11

decision, which was controlling at the time of this defendant's conviction, the highest court of the State of New York held that the requirement for "impairment" is satisfied by a much lesser degree of influence. In *People v. Cruz* (1979), 423 N.Y.S.2d 625, 628, 399 N.E.2d 513, 516, the New York Court of Appeals held that:

> On its face, however, the statute does not speak of degrees of impairment; it simply prohibits the driving of a motor vehicle when the driver's "ability to operate such vehicle is impaired." (Vehicle & Traffic Law, s. 1192, subd. 1). Thus driving a motor vehicle while there is any alcoholic impairment of the driver's "ability to operate such vehicle" would constitute a violation.
>
> . . . .
>
> . . . It is evident from the statutory language and scheme that the question in each case is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver. [Emphasis added].

We have specifically held in Montana that the degree of impairment which the New York court found sufficient to convict under subsection 1 of its impairment law, is not sufficient to convict under Montana's statute which prohibits operating a motor vehicle while under the influence of alcohol.

In *City of Helena v. Davis* (1986), 222 Mont. 492, 723 P.2d 224, we held that it was error to instruct a jury that a person could be convicted of operating a vehicle under the influence of alcohol in violation of § 61-8-401, MCA, if the jury simply found "any alcoholic impairment." In that case, the defendant was charged with operating a motor vehicle under the influence of alcohol or

12

drugs in violation of § 61-8-401, MCA. The jury was instructed, over defense counsel's objection, that "[i]f the ability of the driver of an automobile has been lessened in the slightest degree by the use of alcohol, then the driver is deemed to be under the influence of alcohol." *Davis*, 723 P.2d at 225. On appeal, the defendant contended that he could not violate § 61-8-401, MCA, unless his driving ability was impaired *"to a degree that [rendered] him incapable of safely driving a [motor] vehicle."* *Davis*, 723 P.2d at 225 (underlining added). The defendant's position was as follows:

> Davis asserts, the statute he was charged and convicted of violating *does* contain a clear legislative directive as to the extent of influence of the intoxicants. The offense charged in this case does not say the law is broken if one drives while impaired to the "slightest degree;" rather, the law states an offense is committed if one's driving ability is impaired "to a degree that renders him incapable of safely driving a [motor] vehicle."

*Davis*, 723 P.2d at 226.

This Court agreed with the defendant and held that the instruction given in the district court in that case:

> [N]o longer [was] a proper statement of the law in this State and the instruction must either be revised or abandoned to conform with the provisions of § 61-8-401. As noted above, we find the legislature today had specifically spelled out in § 61-8-401 the extent of the influence of intoxicants necessary to be convicted of driving under the influence of alcohol or drugs. As applied to the instant case, Davis is entitled to a new trial with the jury being instructed as to proper criteria set out in § 61-8-401 which is applicable to a charge of driving under the influence of alcohol *and/or* drugs.

*Davis*, 723 P.2d at 227.

13

In its reference to the dissent, the majority opinion totally misses the point. The point is that under New York's offense of driving while impaired, any degree of impairment is sufficient. Under Montana's offense of driving while intoxicated, any degree of impairment is not sufficient. The fact that Montana's statute sets out inferences based on various levels of alcoholic concentrations merely confirms that distinction.

The majority opinion states that "[a]pparently the dissent is suggesting that if these elements are not presented within jury instructions, then under *Davis* there cannot be impairment which is different than the state of New York. We disagree with that analysis."

The dissent has nothing to do with jury instructions. The dissent is based upon very clear distinctions between the New York statute for which defendant was convicted, and the Montana statute for which his license is being revoked. The difference, based upon prior decisions from that state and this state, is the degree of impairment necessary for conviction.

The majority opinion states that:

> As a result of the 1987 addition to § 61-8-401, MCA, Montana is no longer limited to proof of alcohol concentration in a person's blood, urine or breath. While previous subsections of § 61-8-401, MCA, contain the cut-off levels of blood alcohol content, the newly added subsection (3) has added a definition by which "under the influence" can be defined not by a chemical analysis of the blood, but by the observation that a "person's ability to safely operate a motor vehicle has been diminished."

14

Subsection (3) of § 61-8-401, MCA, does not have anything to do with the method by which intoxication is proven and says nothing about observation of an accused's physical or mental capacities. It simply defines "under the influence" to mean that as a result of alcoholic consumption, "a person's ability to safely operate a motor vehicle has been diminished." (Emphasis added).

For some reason which escapes me, the majority concludes that based upon the addition of this definition in the 1987 amendment to § 61-8-401, MCA, the *Davis* decision has no precedential significance. However, that makes no sense. In *Davis*, we held that it was error to instruct a jury that "[i]f the ability of the driver of an automobile has been lessened in the slightest degree by the use of alcohol, then the driver is deemed to be under the influence of alcohol." *Davis*, 723 P.2d at 225. We arrived at that conclusion because of statutory presumptions based upon blood alcohol content. We did not do so because of the absence of the definition which was added by amendment in 1987. In fact, according to the defendant in *Davis*, the definitional addition relied on by the majority was already present since the statute under which he was charged provided that:

> (1)   It is unlawful and punishable as provided in 61-8-714 for any person who is under the influence of
>
> . . . .
>
> (d)   alcohol and any drug *to a degree that renders him incapable of safely driving a vehicle* to drive or be in actual physical control of a vehicle within this state.

15

Therefore, there was no change to Montana's DUI statute in 1987 which has any bearing on our holding in *Davis*. We simply held that any diminution in the ability to drive, no matter how slight, did not constitute a violation of our DUI statute. If anything, the amendment referred to in the majority opinion makes that conclusion even more inescapable today.

Since conviction of driving while "impaired" in New York requires a lesser degree of intoxication than driving "under the influence" in Montana, the offenses are not substantially similar as a matter of law. Indeed, if they were substantially similar, New York would not find it necessary to establish two separate offenses which differ only with regard to the degree of impairment an individual suffers from the influence of alcohol.

For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court.

_____
Justice

Justices Gray and Hunt join in the foregoing dissent.

_____
Justices

16

December 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gregory A. Jackson
Jackson & Rice
833 Last Chance Gulch
Helena, MT 59601

Hon. Joseph P. Mazurek, Attorney General
Peter Funk, Assistant
215 No. Sanders
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy